701 So.2d 995 (1997)
STATE of Louisiana, Appellee,
v.
Darrin Tyrone SLOAN, Appellant.
No. 29787-KA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 1997.
*996 Piper and Associates by Anthony Hollis, Shreveport, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Karen M. Avery, Catherine M. Estopinal, Assistant District Attorneys, for Appellee.
Before MARVIN, C.J., and BROWN and PEATROSS, JJ.
PEATROSS, Judge.
Darrin Tyrone Sloan ("Defendant") was convicted by a jury of second degree murder in violation of LSA-R.S. 14:30.1, and the trial judge imposed the mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence. Sloan appeals his conviction and sentence urging the following as error: (1) the trial court's failure to declare a mistrial based on the alleged prejudicial "extended display" of the State's Exhibit No. 5 which consisted of pictures of the deceased victim at the crime scene; (2) the court's failure to declare a mistrial based on the prosecutor's statements during closing arguments; and (3) the trial court's failure to render a post verdict judgment of acquittal because the evidence did not reasonably permit a finding of guilty. For the following reasons, we affirm the conviction and sentence.

FACTS
On January 24, 1995, Stephanie Walker ("Stephanie"), reported to her high school principal that she believed her boyfriend, the Defendant, may have committed a murder. The principal contacted the police and Detectives Allen Johnson and Jimmy Muller of the Shreveport Police Department responded. Stephanie told Johnson and Muller that on January 17, 1995, she saw a body in the trunk of her boyfriend's car and that the Defendant later told her that he killed the victim and disposed of the body. Stephanie also stated that another individual, known to her only as Roderick, was involved.
Subsequently, the investigating officers found a missing persons report for Larry Conner, who had been missing since January 17, 1995, the same day Stephanie said she saw the body in the trunk of the Defendant's car. Stephanie rode with Detectives Johnson and Muller in an unmarked car and identified the Defendant's house and his car, which was parked in the driveway of the house. As Johnson and Muller were meeting with several other officers at a location near the Defendant's home to discuss the case, the Defendant drove by in his car. The Defendant was stopped and arrested on outstanding warrants for unrelated charges and his passenger, Roderick Simmons ("Roderick") was also arrested on an outstanding warrant. The Defendant's car was impounded at that time.
After questioning by police, Roderick eventually led officers to the body of the victim. Following the execution of a search warrant at the Defendant's home and car, the Defendant was arrested for the second degree murder of Larry Connor. The Defendant denied his involvement in the crime and testified at his trial. The jury, nevertheless, found the Defendant guilty of second degree murder and he was sentenced to life in prison without benefit of parole, probation or suspension of sentence.

DISCUSSION

Post Verdict Judgment of Acquittal
When issues are raised on appeal, both as to the sufficiency of the evidence and *997 as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La. 1992).
La.C.Cr.P. art. 821 provides that a motion for post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.), writ denied, 604 So.2d 973 (La.1992). The Defendant did not file a motion for post verdict judgment of acquittal with the trial court pursuant to La.C.Cr.P. art. 821, but raises the issue of sufficiency of the evidence in this court by assignment of error. See State v. Green, 28,994 (La.App.2d Cir. 2/26/97), 691 So.2d 1273. We find the evidence sufficiently supports Defendant's conviction of second degree murder.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987); State v. Bosley, 29,253 (La.App.2d Cir. 4/2/97), 691 So.2d 347.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Carey, et al., 628 So.2d 27 (La.App. 2d Cir.1993); State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992); State v. Emerick, 499 So.2d 195 (La.App. 2d Cir.1986).
In order to convict the Defendant of second degree murder, the State had to prove beyond a reasonable doubt (1) that the Defendant killed a human being and (2) that the offender had a specific intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1; State v. Thompson, 27,512 (La.App.2d Cir. 12/6/95), 665 So.2d 643.
In an effort to prove the State's case, Detective Muller testified regarding his participation in the investigation of the murder. After responding to the call from the high school principal, Muller was the primary investigating officer of the murder and was responsible for securing the search warrants for the Defendant's house and car. Located behind the Defendant's house was a small metal building or shed where the murder allegedly took place. Numerous items were recovered from the shed and the Defendant's house during the execution of the search warrant.
Stephanie testified that the Defendant was her boyfriend and, between January 17 and January 24, 1995, she was living with him. Stephanie said that on the day the murder allegedly occurred, she was at the Defendant's house and he was acting "weird." The Defendant told her not to go outside and not to turn on any lights in the house; then he left with Roderick. On the Defendant's return to the house, Stephanie heard him in the garage. She opened the door, turned on the garage light and saw the Defendant and Roderick. While she stated she didn't get a chance to "really look," she saw a body in the trunk of the car and the Defendant and Roderick cleaning up blood.
Stephanie told police that the Defendant came to her and told her about someone he shot, but he did not identify the person. She stated "[H]e told me `Have someone ever pleaded to you don't kill them and don't do something else?' I didn't know what he was talking about." The Defendant later told Stephanie that he shot the victim because of a $20 debt and that Roderick assisted with *998 the disposal of the body. Stephanie said she told the officials at her school about the incident on January 24, 1995, because the Defendant threatened her life that day before taking her to school.
Roderick testified as a witness for the State. He stated that he knew Larry Connor, the victim, and that the Defendant had killed Connor. Roderick testified that, on the day of the killing, he went to the Defendant's house, and as he was walking up, he heard the Defendant and the victim talking in the shed. Roderick called out the Defendant's name and the Defendant told him to go inside the house. While Roderick was in the house waiting for the Defendant, he heard one or two gunshots and, as he began walking to the back door of the house, the Defendant entered the house. The Defendant told Roderick he had just killed Larry Connor. At that point, the Defendant and Roderick left the house in Defendant's car to pick up Stephanie. Roderick testified that after they returned to the house, the Defendant had him walk to the shed and sit in the doorway while the Defendant cleaned the shed.
Roderick stated he saw the victim and then the Defendant rolled the body in the carpet from the shed and told Roderick to clean up the blood. The Defendant backed his car onto the carport and told Roderick to help him put the body in the trunk. The Defendant then started "fussing" at Stephanie because she opened the door or looked out of the window. Roderick and the Defendant left the house and the Defendant dumped the victim's body on Fulton Street, where the police later found it. The carpet was dumped in another location and was never recovered by the police.
Roderick stated the Defendant told him he shot the victim because of a debt. Roderick admitted that he initially denied any knowledge of the murder because the Defendant had threatened to kill him if he told what happened.
The State presented the testimony of Dr. Brenda Rheames, the chief deputy coroner for Caddo Parish and an expert in forensic pathology. She testified that the victim had a gunshot wound to the left region of his head and another gunshot wound to the left mid-back region with the exit wound on the front left shoulder. She found soot around the head wound which indicated that it was a contact wound, meaning the gun was on the victim's head at the time the shot was fired. The doctor was "reasonably sure" that the gunshot wound to the head was inflicted after the wound to the chest region. After a review of findings from the scene of the shooting, the doctor opined that the victim was shot in the back first with the body falling to the floor, enabling the assailant to approach the body without any interference, tightly put a gun to the victim's head and pull the trigger. Dr. Rheames also collected adhesive residue from the victim's wrists, and left ankle or leg.
Curtis Knox, an expert in forensic serology at the North Louisiana Crime Lab, testified regarding his analysis of various items recovered from the Defendant's house and car and from the body of the victim. He identified a broken wooden stick found in the trunk during the search of Defendant's car which had several spots on it which tested positive for human blood. Human blood was also found inside the Defendant's car. Knox was unable to determine the source of this blood and no other blood was found on items submitted to the crime lab.
Randall Robillard of the North Louisiana Crime Lab, an expert in forensic chemistry, testified regarding his analysis of various items submitted from this case. Robillard matched carpet fibers from a piece of carpeting taken from Defendant's shed with fibers found inside the Defendant's vehicle. In addition, fibers recovered from the victim's clothing matched a reference piece of carpeting removed from the Defendant's shed.
Robillard also compared two rolls of duct tape (one black and one silver) and two separate pieces of duct tape recovered from the Defendant's home and vehicle with the residue found on the victim's body. The black duct tape did not match any of the other tested pieces or the residue, but the silver duct tape and the individual pieces of duct tape contained a chemical composition identical to the residue found on the victim's body.
*999 Through his own testimony and that of several witnesses, the Defendant attempted to establish that another person, specifically, Roderick Simmons, was responsible for killing the victim. It is apparent from the jurors' verdict that they chose to believe the testimony of the State's witnesses as opposed to that of the Defendant's witnesses. We conclude that the State presented sufficient evidence to convict the Defendant of second degree murder.

Mistrial Due to Photographs
The Defendant contends the State's Exhibit S-5, which consisted of photographs of the deceased victim's body where it was found by the police, was displayed before the jury for an inordinate amount of time which created the danger of unfair prejudice against the Defendant. The Defendant states in brief that "Such a prolonged display together with the plain view of the accused, may have created the inference of culpability of Defendant, and predisposed members of the jury of the Defendant's guilt."
The State maintains the photographs had already been admitted into evidence and viewed by the jurors before a bailiff was notified to turn the photographic display away from the jurors. The State also alleges that the Defendant fails to state how the photographs were "gruesome" or cite any cases where continuous display of a properly admitted piece of evidence was found to be so prejudicial as to warrant a mistrial.
The photographs being complained of were properly admitted into evidence without objection by the defense. After an off-the-record discussion requested by the defense, the jury was removed and the Defendant requested a mistrial based on the fact that the exhibit was left facing the jury and at least one juror requested the photograph be moved. The defense counsel stated, "I would like to state for the record that due to inadvertencewe're certainly not suggesting it was any wrongdoing by the State...." The court noted the defense counsel's concerns, but declined to declare a mistrial stating that the evidence had already been admitted without objection and that the jury had already reviewed all of the State's exhibits.
La.C.Cr.P. art. 775 provides that on a motion by the defendant, a mistrial shall be granted when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to receive a fair trial. A mistrial is a drastic remedy and is warranted only when the error results in substantial prejudice sufficient to deprive the defendant of any reasonable expectation of a fair trial. State v. Cotton, 29,101 (La.App.2d Cir. 1/22/97), 687 So.2d 1074; State v. Sanford, 27,268 (La.App.2d Cir. 8/23/95), 660 So.2d 555; writ denied, 95-2570 (La.2/9/96), 667 So.2d 527. The decision to grant or deny a mistrial for prejudicial conduct rests within the trial court's discretion and will not be disturbed absent an abuse of discretion. State v. Smith, 433 So.2d 688 (La.1983); State v. Bryant, 29,344 (La.App.2d Cir. 5/7/97), 694 So.2d 556.
We agree with the trial court that since these photographs were already admitted into evidence without objection and had been reviewed by the jury, the Defendant did not suffer substantial prejudice sufficient to deprive him of the reasonable expectation of a fair trial. The trial court did not abuse its discretion in denying the motion for mistrial.

Mistrial Due to Prosecutor's Comments
The Defendant contends the prosecutor made the following impermissible statements during the State's rebuttal closing argument:
Roderick Simmons is a young, possibly a gang-banger. He's headed down the road. Guess who his mentor is? Who has taken him under his wing? Darrin Sloan.
* * * * * * *
Darrin sells drugs ... Darrin does drugs.
The Defendant alleges the prosecution was asserting that the Defendant had committed the two additional crimes of selling and using drugs and that the Defendant was a member of a group known for criminal activity. The Defendant argues that these comments violated La. C.E. art. 404(B)[1] and that the state *1000 was asserting "new" material that was not mentioned during the closing arguments of either the State or the defense.
The State maintains the Defendant failed to object to this argument during the trial and, therefore, is prohibited from now raising the issue on appeal. In the alternative, the State contends the remarks made during the closing arguments were merely a repetition of testimony the Defendant made during the trial and the comments made during the closing argument did not cause any unfair prejudice to the Defendant.
We agree that the defense failed to object to the statements which it now assigns as being prejudicial. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. State v. Hamilton, 594 So.2d 1376 (La.App. 2d Cir.1992); State v. Brown, 552 So.2d 612 (La.App. 2d Cir.1989), writ denied, 558 So.2d 581 (1990); State v. Bosley, 29,253 (La. App.2d Cir. 4/2/97), 691 So.2d 347; La. C.Cr.P. art. 841.
Even assuming, arguendo, that the Defendant had properly objected during the trial, we do not find that the trial court abused its discretion in denying the motion for mistrial. As stated above, mistrial is a drastic measure. Improper or allegedly prejudicial argument requires reversal when it is probable that the jury's verdict was influenced by the remarks. State v. Deboue, 552 So.2d 355 (La.1989), cert denied, 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 174 (1990). Before a verdict will be set aside on the ground of improper argument, the reviewing court must be thoroughly convinced that the jury was influenced by the remarks and that the comments contributed to the verdict. State v. Abbott, 29,497 (La.App.2d Cir. 6/18/97), 697 So.2d 636; State v. Baker, 28,152 (La.App.2d Cir. 5/8/96), 674 So.2d 1108.
Regarding the proper scope of argument, La.C.Cr.P. art 774 states:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
The statements made by the prosecutor during the State's rebuttal closing argument were not improper. During the trial, the Defendant gave the following testimony:
Q. So you smoke marijuana, right?
A. Yes.
Q. Why did you have cocaine on you when you were arrested back in 1992, the thing that you were on probation for?
A. Yeah.
Q. Why do (sic) you have it then, if you don't do it?
A. I ain't do it.
Q. You do not do cocaine?
A. No.
Q. So why did you have it on you?
A. At the time, then, you know what I'm saying, I was selling.
Later during his testimony, the Defendant stated:
Q. Y'all just did drugs together?
A. Did drugs? You check my system, you know I ain't never did no drugs.
Q. What?
A. Check my system. I ain't never did no drugs.
Q. You said you did marijuana?
A. Shit, that's weed. I don't consider that as a drug. That's a bad word for it.
Q. But it is illegal?
A. (No response)
Q. Have you ever been convicted for that?
A. Yeah, I got caught with some joints.
While being questioned about having a gun, the Defendant gave the following testimony regarding his gang affiliations:
Q. So when you and Roderick go driving around in it, you have Roderick hold a *1001 gun, you said, in case something went down, right?
A. Yeah, it'll be in the compartment.
Q. Okay. What were you afraid was going to go down?
A. See, when you're in a gang, you know what I'm saying, or was affiliated in a gang, you can't never predict what may happen. So it's better safe than sorry.

* * * * * * *
A. Because he keeps a gun on him. He is a young banger. See me, I'm what you call an O.G. So you've got a gang member and a gang banger, and gang banger is a gang banger (sic). A gang member, you see what I'm saying, he can be O.G. He ain't out there gang banging like the youngsters is (sic).
Q. So you're just a gang member?
A. Yeah, you can't never get out of it. Once you claim it, you in it.
Q. What gang were you in?
A. Sixty.
Based on the Defendant's testimony, the prosecutor's arguments were reasonable inferences made from the evidence presented and did not appear designed to appeal to the prejudice of the jurors. The trial judge, therefore, did not abuse his discretion by refusing to grant a mistrial based on these comments.

Error Patent
Our error patent review disclosed that the trial judge failed to properly inform the Defendant of the prescriptive period for post-conviction relief as required by La.C.Cr.P. art. 930.8. This defect had no bearing on the sentence and is not grounds to reverse the sentence or remand the case for resentencing.[2]State v. Cox, 604 So.2d 189 (La.App. 2d Cir.1992); State v. Mock, 602 So.2d 776 (La. App. 2d Cir.1992); La.C.Cr.P. arts. 921, 930.8(C).

CONCLUSION
For the foregoing reasons the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] La. C.E. art. 404(B), in part, prohibits the introduction of evidence regarding other crimes, wrongs or acts to prove the character of a person in order to show that he acted in conformity therewith.
[2] The district court is directed to send appropriate written notice to Defendant within ten days of the rendition of this opinion and to file proof of Defendant's receipt of such notice in the record of the proceedings.