|,BROWN, J„
Defendants, Tubious . Pratt and Darrin Simpson, were convicted as charged of aggravated rape, a violation of La. R.S. 14:42, and aggravated kidnaping, a violation of La. R.S. 14:44. On each count, the trial court imposed life sentences without benefit to run concurrently. Defendants have appealed their convictions and sentences. We affirm.

Facts

At about 5:00 a.m. on March 29, 1996, Ms. Williams’s body was found on the shoulder of Old Blanchard Road in Shreveport, Louisiana, by a security guard on his way home. She had been held captive for hours in her 1994 Chrysler LeBaron convertible and repeatedly raped, beaten and strangled. This heinous act started when Ms. Williams stopped at Bank’s Barbeque on Jewella Road around midnight to get something to eat. Upon realizing that she did not have enough money to order what ' she wanted, Ms. Williams went into the other side of Bank’s which is a bar and lounge. The bartender, Dolores Penell, noticed and remembered Ms. Williams as being nicely dressed. Ms. Williams drank a rum and coke and a beer, staying for approximately 30 minutes before leaving.
As Ms. Williams was getting into her car, parked in the Bank’s Barbeque lot, she was struck on the head by a hard object and forced into her vehicle. She was shoved from the driver’s side to the passenger side, while one of two young men continued to strike her. Ms. Williams later identified her attackers as defendants, Tubious Pratt and Darrin Simpson. At first, Pratt was driving. Seated next to him in such close quarters, Ms. Williams could see him clearly. Immediately, Ms. Williams started questioning her assailants, asking them what they were doing, what they wanted, why were they doing this to her, and stating that if they wanted her car they could have it. Both men cursed her and told her to |2shut up and take off her dress. When she hesitated, they began to hit her again. Although Ms. Williams complied, the two men continued beating her.
Simpson ordered Ms. Williams into the back seat. Ms. Williams testified that Simpson grabbed and dragged her into the back seat and forced her to perform oral sex. When she looked at him, he hit her and pulled a red bandana from his pocket to cover his face.
Next, Simpson ordered Ms. Williams to have sex with him. He took a condom out of his pocket and put it on and told her to “ride me, bitch.” Ms. Williams complied. After Simpson was through, he told Pratt that he was “done with the bitch” and asked him if he “wanted some.” Pratt stopped the car at a large football stadium (the fairgrounds) and both men got out. Ms. Williams noted that the car was still running and climbed over the center console to the driver’s seat in an attempt to escape. Although she was functioning in a haze and could not see well through her swollen eyes, Ms. Williams testified that she put the car in drive and began to move, but that she struck something. At that time, Simpson grabbed her by the neck and got control of the steering wheel. In retaliation, the two men became angry and pulled Ms. Williams from the car and began to beat her again. She stated that she saw stars and felt blood gushing from her mouth.
Ms. Williams was then thrown into the back seat of the car with Pratt while Simpson drove. Pratt made her perform oral sex on him but complained when she bled on him. At that point, Pratt began to strike her again. Pratt got a condom from Simpson and put it on. He then ordered Ms. Williams to have intercourse with him. *358 Only partial penetration was achieved, however, because Pratt was not fully erect and the condom fell off. Pratt became irate, believing that the condom had come off inside Ms. Williams and he penetrated her with his fingers in an attempt to retrieve it. Unable to locate the condom, which had fallen to the floorboard, Pratt began hitting Ms. Williams in the back.
| sPratt and Simpson changed places again. Simpson, who was now in the back seat with Ms. Williams, ordered her to perform oral sex on him again. However, her mouth was so full of blood that Simpson remarked that she “wasn’t good for nothing no more.” Pratt stated that because she had seen both of their faces, they had to “get rid of her.” When Ms. Williams began to scream, Simpson took his red bandana off and started to choke her with it. Ms. Williams fought back, but everything “went black.” She testified that her next conscious thought was feeling her body being dragged across rocks and shrubs and hearing her two attackers discuss whether she was dead. The men began beating and stomping her. They also jumped on her limp body. Ms. Williams stated that she could hear Simpson reassure Pratt that she was dead. She stated that she dreamed she was talking to her mother who had died in 1993 and the next thing she remembers is waking up in the Intensive Care Unit at LSU Medical Center.
At approximately 3:00 a.m., Ms. Williams’ car was found running, but abandoned, at Plano and Fondren Streets. When the police arrived, they found massive amounts of blood in the car. The vehicle was impounded and the officers began canvassing the area to determine who the car belonged to and to see if anyone was injured. Inside the car was Tubious Pratt’s jacket which contained a picture of him in the pocket. Later Pratt’s fingerprints were discovered on the trunk. Ms. Williams was found half a mile from where the car had been abandoned.
Ms. Williams was interviewed by Shreveport Police Detective Tom Oster while in ICU at LSU Medical Center. Det. Oster stated that he was prepared to work this case as a homicide because, after seeing Ms. Williams, he feared that she could not survive such extensive injuries. Det. Oster noted that Ms. Williams had a battered and swollen head and face, all of her ribs were broken, her lungs were collapsed and she had a black mark two inches wide around her neck. She also |4had serious internal injuries and bleeding. During his interview, Det. Oster showed Ms. Williams several photographs and asked whether she could identify her attackers. Ms. Williams identified both Simpson and Pratt as her assailants.
As the investigation continued, interviews of witnesses, including the bartender, Ms. Penell, revealed that both Simpson and Pratt were in the parking lot of Bank’s Barbeque when Ms. Williams left the bar on the evening of March 28, 1996. Pratt was arrested at the home of Tammy West, Simpson’s girlfriend. Pratt, who was 15 years old, was interviewed with his mother present and admitted to getting in the car with Ms. Williams at Bank’s Barbeque although he denied leaving with her. He stated that Simpson did drive off with Ms. Williams. A search of Ms. West’s house revealed items of Simpson’s clothing, including a red bandana which was found to have a DNA mixture from Ms. Williams and Tubious Pratt.
Both Simpson and Pratt were indicted on charges of aggravated kidnaping and aggravated rape. At trial, the jury found them guilty on both counts. Both defendants received mandatory sentences of life imprisonment without benefit on each count. The sentences were ordered to run concurrently. Neither defendant filed a motion to reconsider their sentences, but have appealed both their convictions and sentences:

Discussion

Sufficiency of the Evidence

Both defendants contend that there is insufficient evidence to support their convictions.
*359 Simpson claims that Ms. Williams’ identification of him lacks credibility. Specifically, Simpson argues that positive identification of the perpetrators was not possible given Ms. Williams’ testimony that she was beaten and shoved during most of the incident and that the perpetrators attempted to hide their faces from | flier. He also urges that Ms. Williams’ identification of him while in the hospital was unreliable because she was heavily medicated. In addition, Simpson asserts that Ms. Williams’ identification of him at the grand jury hearing is suspect because she admitted on cross-examination to having seen Simpson and Pratt together in the courthouse hallway, in orange jail jumpsuits, just before she appeared before the grand jury. Simpson also argues that the fact that his hands were bruised and his knuckles swollen when he was arrested is not circumstantial evidence that links him to the crime. Simpson claims that the state failed to exclude the reasonable probability that he was misidentified by Ms. Williams.
On the other hand, Pratt’s main argument is that he had an alibi. Pratt argues that while he was present in the parking lot of Bank’s Barbeque when Ms. Williams left the bar and went to her vehicle, he was not in the car when it left the parking lot. In support of his claim, Pratt testified and also presented the testimony of his mother, Linda Pratt, and his aunt, Jerrie Vinson. Pratt also contends, for the same reasons urged by Simpson, that Ms. Williams’ identification of him was suspect.
The proper standard for appellate review of a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).[1]
Lin the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.05/08/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760. It is not the function of the appellate court to evaluate the credibility of witnesses. State v. Richardson, 425 So.2d 1228 (La.1983); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984).
In cases involving a defendant’s claim that he was not the person who *360 committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Baker, 28,152 (La.App.2d Cir.05/08/96), 674 So.2d 1108. Positive identification by only one witness may be |7sufficient to support a defendant’s conviction. State v. Davis, 27,961 (La.App.2d Cir.04/08/96), 672 So.2d 428; State v. Miller, 561 So.2d 892 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (La.1990); State v. Royal, 527 So.2d 1083 (La.App. 1st Cir.1988), writ denied, 533 So.2d 15 (La.1988).
What the defendant must show when seeking to suppress an identification is that the procedure used was suggestive and that the totality of the circumstances presented a substantial likelihood of mis-identification. State v. Martin, 595 So.2d 592 (La.1992); State v. West, 561 So.2d 808 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (La.1990). The U.S. Supreme Court has approved several factors for evaluating whether the reliability of an identification may outweigh the suggestiveness of the procedures employed. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Davis, supra. The factors are: the opportunity of the witness to view the criminal at the time of the crime; the witness’s degree of attention; the accuracy of the victim’s prior description of the criminal; the level of certainty demonstrated at the confrontation; and the time between the crime and the confrontation.
Within a day of the horrible crime, Ms. Williams identified Simpson and Pratt as her attackers from photo line-ups. She also positively identified defendants at trial. Ms. Williams testified that she was forcibly shoved into, detained and carried away in her car by Simpson and Pratt, that their clear intent was to detain and imprison her to obtain sex, that when she resisted their demands she was brutally beaten into compliance, and that both Simpson and Pratt forced her to have oral and vaginal sex with them. Physical and circumstantial evidence, such as Simpson’s bruised and swollen hands, Pratt’s jacket left in and fingerprints on the car and Pratt’s DNA together with that of the victim’s on Simpson’s blood-stained bandana corroborate Ms. Williams’ testimony. While Ms. Williams’ | ^identification of defendants from line-up photos may have been somewhat tentative, her face-to-face identification of them was unequivocal.
In this case, the jury clearly disregarded the testimony of Pratt, his mother and aunt as not credible regarding his alibi. It was within the province of the jury to accept the identification of defendants by and the testimony of Ms. Williams and to reject the defense offered by Simpson and Pratt. Under the facts of this case, a rational trier of fact could have found beyond a reasonable doubt that the evidence, viewed in the light most favorable to the prosecution, established that Simpson and Pratt committed aggravated kidnaping and aggravated rape.

Spectator Misconduct

Both Simpson and Pratt contend that the trial court erred in fading to grant a mistrial when, during Ms. Williams’ direct examination, a spectator in the audience yelled “good idea.” The spectator, later identified as the ex-boyfriend of the victim, as well as the father of her child spoke out in reaction to the prosecutor’s question to Ms. Williams of whether she was aware that defendants could go to jail for life. Defendants claim that the outburst deprived them of a fair trial.
La.C.Cr.P. art. 771(2) provides that the court shall admonish the jury to disregard an irrelevant or immaterial remark or comment by a person other than the judge, district attorney or a court official, made in the presence of the jury. The remark or comment must be of such a nature that it may create prejudice against the defendant or the state. If the trial court feels *361 that an admonishment is not sufficient to insure a fair trial, a mistrial may be granted. La.C.Cr.P. art. 775 provides that a mistrial shall be ordered when prejudicial conduct in the courtroom makes it impossible for the defendant to obtain a fair trial.
Because a mistrial is a drastic remedy, it should be granted only when the error resulted in substantial prejudice sufficient to deprive the defendant of any | treasonable expectation of a fair trial. State v. Sloan, 29,787 (La.App.2d Cir.09/24/97), 701 So.2d 995; State v. Cotton, 29, 101 (La.App.2d Cir.09/24/97), 687 So.2d 1074; State v. Sanford, 27,268 (La. App.2d Cir.08/23/95), 660 So.2d 555, writ denied, 95-2570 (La.02/09/96), 667 So.2d 527. The decision to grant or deny a mistrial for prejudicial conduct rests within the trial court’s discretion and will not be disturbed absent an abuse of discretion. State v. Smith, 433 So.2d 688 (La.1983); State v. Sloan, supra; State v. Bryant, 29,344 (La.App.2d Cir.05/07/97), 694 So.2d 556.
From a review of the record, it is apparent that the comment by Mr. Stephens was not heard by everyone in the courtroom. The trial judge did not hear it. The bailiff reported that he heard someone speak out but could not understand what was said. It is not clear that any of the jurors heard it. When he was made aware of the outburst, the trial judge had the bailiff escort the man out of the courtroom. WTien the jury was dismissed, defense counsel moved for a mistrial. The judge had the man brought back into the courtroom for questioning. The man admitted to making the statement and the trial court held him in contempt of court. He was sentenced to 30 days in jail, suspended provided that he stay away from the courthouse for the remainder of the trial. The trial court concluded that the unsolicited outburst did not cause a legal defect in the proceeding and denied the motion for mistrial. An admonition was not requested. Under these circumstances, we find no abuse of discretion in the trial court’s decision not to grant a mistrial.

Excessive Sentence

Both Simpson and Pratt complain that their concurrent mandatory life sentences are excessive. Both defendants also assign as error the trial court’s failure to comply with the mandates of La.C.Cr.P. art. 894.1.
|inA reviewing court does not consider the trial court’s alleged failure to comply with article 894.1 when no motion to reconsider the sentence is filed; nonetheless, where there is a constitutional mandatory sentence, there is no need for the trial court to justify under article 894.1 a sentence it is legally required to impose. State v. Koon, 31,177 (La.App.2d Cir.02/24/99), 730 So.2d 503; State v. Rose, 606 So.2d 845 (La.App. 2d Cir.1992). See La.C.Cr.P. art. 881.1(D).
As to the bare claim of constitutional excessiveness, defendants received mandatory sentences of life imprisonment without benefit. Such mandatory sentences have been found to be constitutional. See State v. Ingram, 29,172 (La.App.2d Cir.01/24/97), 688 So.2d 657, writ denied, 97-0566 (La.09/05/97), 700 So.2d 505; State v. Brown, 557 So.2d 1085 (La.App. 2d Cir. 1990). The sentences on each conviction were ordered to be served concurrently. Considering the cruelty, meanness and lack of remorse shown by these defendants, concurrent sentences appear lenient. These sentences clearly are not excessive.
No errors patent were noted.[2]

Conclusion

For the reasons set forth above, defendants’ convictions and sentences are AFFIRMED.

. La. R.S. 14:44 defines aggravated kidnaping as:
the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender’s actual or apparent control:
(1) the forcible seizing and carrying of any person from one place to another; or
(2) the enticing or persuading of any person to go from one place to another; or
(3) the imprisoning or forcible secreting of any person.
La. R.S. 14:42 defines aggravated rape as: a rape committed upon a person sixty-five years of age or older or where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim’s age shall not be a defense.
(5) When two or more offenders participated in the act.
(6) When the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance.

. The remaining assignments of error asserted by defendant Simpson, having not been briefed, are considered abandoned. We note a motion to sever was filed by Simpson but never heard by the trial court. Thus, it was waived.