# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-649


STATE OF LOUISIANA

VERSUS

GLYNN JUNIORS


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF VERMILION, NO. 37,733,
HONORABLE J. STERLING SNOWDY, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and James T. Genovese, Judges.


**CONVICTION AND SENTENCE CONDITIONALLY AFFIRMED; REMANDED WITH INSTRUCTIONS.**

Rodney A. Brignac
Special Assistant District Attorney
Post Office Box 399
LaPlace, Louisiana 70069-0399
(985) 652-9757
Counsel for:
    State of Louisiana

Michael Harson
District Attorney
Post Office Box 3306
Lafayette, Louisiana  70502-3306
(337) 232-5170
Counsel for:
    State of Louisiana

**Katherine M. Franks**
**Louisiana Appellate Project**
**Post Office Box 2341**
**Slidell, Louisiana  70459-2341**
**(985) 847-1212**
**Counsel for Defendant/Appellant:**
       **Glynn Juniors**

SULLIVAN, Judge.

Defendant, Glynn Juniors, was indicted in St. John the Baptist Parish in the Fortieth Judicial District for the first degree murder of Joann Edler, a violation of La.R.S. 14:30. Pursuant to a defense motion for a change of venue, the case was transferred to Vermilion Parish in the Fifteenth Judicial District. Subsequently, the charge against Defendant was amended to second degree murder, a violation of La.R.S. 14:30.1. After a jury trial in Vermilion Parish, Defendant was found guilty of second degree murder by a vote of eleven to one. He was later sentenced to the mandatory term of life imprisonment at hard labor. He appeals his conviction and sentence, raising seven assignments of error. For the following reasons, we conditionally affirm Defendant's conviction and sentence pending remand for a determination of whether a *nunc pro tunc* hearing to assess Defendant's competency is possible, and if so, the outcome of that hearing.

## Procedural History

A grand jury indicted Defendant and a co-defendant, Ronald Williams, for the first-degree murder of Joann Edler, an employee of BRS Seafood in LaPlace, Louisiana, who was found dead at her place of employment with her throat slashed and a gunshot wound to her head.[1] That indictment initially bore docket number 98-88 and was assigned to Division "B" of the Fortieth Judicial District. The same individuals were also indicted for attempted first degree murder and attempted armed robbery in an incident that occurred at the In & Out Food Store in Reserve, Louisiana. That indictment was assigned docket number 98-12 and allotted to Division "C."

On January 22, 1998, Defendant appeared with appointed counsel from the indigent defender board (IDB) in Division "C" and pleaded not guilty to all charges

---

[1]Williams was charged with being a principal to the first degree murder of Ms. Edler. He later pleaded guilty as charged and testified against Defendant in the instant trial.

in both indictments. At that hearing, counsel for the State stated that the first indictment handed down, for first degree murder, was "inadvertently filed into the wrong jacket" and requested that the court switch the docket numbers so that "the murder indictment is in the proper number 98-12(2) and the attempted first degree murder and attempted armed robbery indictment is in its proper jacket which would be 98-88." The present case thereafter proceeded under docket number 98-12 in Division "C."

On January 30, 1998, two capital-qualified attorneys enrolled as counsel for Defendant. Various pre-trial filings were dealt with throughout 1998 and 1999. On January 3, 2000, Defendant filed a "Motion for Mental Examination." The court granted the motions, and set a hearing for April of 2000. The record does not show a ruling on this motion. The case was reset multiple times, then on October 9, 2000, in open court, the State announced it would not seek the death penalty. On October 19, 2000, capital counsel moved to withdraw; the trial court granted the motion and again appointed counsel from the IDB.

On April 12, 2001, Defendant filed a motion for change of venue, which the trial court granted on June 22, 2001. On July 23, 2001, the trial court issued an order setting jury selection in Lafayette Parish. However, on July 31, 2001, the court issued a new order, transferring the case to Vermilion Parish "by special arrangement with the judges of the 15th Judicial District Court."

On August 14, 2001, the trial court ordered that the entire record be transferred to Vermilion Parish. On August 17, 2001, the State filed a motion to amend the indictment to second degree murder. The record was physically delivered to Vermilion Parish on the same date. On August 22, 2001, Defendant pleaded not

2

guilty to the amended charge. The minutes are not clear regarding which judicial district conducted the plea hearing, but Defendant was returned to the St. John the Baptist Parish jail at the close of the hearing.

After additional pre-trial motions, jury selection commenced in the Fifteenth Judicial District in Vermilion Parish on September 5, 2001. After hearing evidence for two days, the jury found Defendant guilty of second degree murder.

In response to Defendant's written motion to be sentenced in the original venue, trial court set the sentencing hearing for St. John the Baptist Parish. On November 13, 2001, the trial court sentenced Defendant to the mandatory term, life imprisonment at hard labor.

Defendant filed a timely motion for appeal on November 16, 2001. The motion included a request that the Louisiana Appellate Project (LAP) represent him on appeal. The trial court sent the notice of appeal to the Louisiana Fifth Circuit Court of Appeal. Subsequently, the appeals clerk for the Fortieth Judicial District filed for an extension of the return date with the fifth circuit. The appellate court granted the motion on February 27, 2002, extending the return date to March 13, 2002. On March 27, 2002, the LAP filed a letter in the district court naming Jennifer Pate as the LAP attorney assigned to the case. The record indicates the case then lay dormant for approximately two years.

On June 2, 2004, the clerk of court for St. John the Baptist Clerk Parish filed a notice with the Vermilion Parish clerk's office, indicating transcripts and other filings were transferred to the latter clerk's office. On June 13, 2004, the LAP sent a letter to the St. John the Baptist Parish clerk indicating that Kay Franks had been appointed to handle the case. On June 30, 2004, the Vermilion Parish clerk's office

3

filed a notice that it was transferring a large number of transcripts, exhibits, and other filings back to St. John the Baptist Parish. Counsel Franks then proceeded with filings in St. John the Baptist Parish and in the fifth circuit. On March 31, 2005, a panel of the fifth circuit concluded that it lacked jurisdiction over the case and ordered that the record be transferred to this court.

**Assignment of Error No. 1**

In his first assignment of error, Defendant argues that the trial court erred by allowing the State to "swap" docket numbers for the two cases in which he was charged. He asserts that the exchange of docket numbers, in effect, allowed the State to choose which judge would hear the case.

District attorneys are prohibited from having any power to select the trial judge for a particular case. The allotment of cases to trial judges must be on a random basis; the prosecution cannot have any power to control the allotment process. *State v. Broussard*, 03-1340 (La. 6/26/03), 852 So.2d 978; *State v. Simpson*, 551 So.2d 1303 (La.1989). However, as Defendant raises this issue for the first time on appeal, he must show prejudice to warrant reversal of his conviction. Such alleged prejudice is assessed pursuant to a harmless-error analysis. *State v. Huls*, 95-541 (La.App. 1 Cir. 5/29/96), 676 So.2d 160, *writ denied*, 96-1734 (La. 1/6/97), 685 So.2d 126.

As Defendant observes, he was arraigned on January 22, 1998. The minutes show that the trial court granted the State's motion to "transfer" the indictment bearing the present charges (Case 1998-88(2)) into another case (Case 1998-12(2)). Neither the minutes nor the transcript of that hearing indicate that Defendant objected to the transfer as shown in the following exchange:

MRS. GRAUGNARD [for the State]:

4

Your Honor, in connection with the arraignment, the State would move in accordance with the situation we explained in the Williams' matter, that the indictment against Mr. Juniors was returned by the Grand Jury prior to the indictment in the attempted first degree murder and attempted armed robbery matter. The indictment in the murder case has been inadvertently filed into the wrong jacket. This matter was assigned the number 98-12 "C" which appears, as a matter of fact on Mr. Stricks' pleadings this morning, and was inadvertently filed into the 98-88 jacket. So we would ask that those, that those indictments be switched so that the murder indictment is in its proper number 98-12 (2) and the attempted first degree murder and attempted armed robbery indictment is in its proper jacket which would be 98-88 (2).

MR. STRICKS [for Defendant]:
Your Honor, may I inquire if 98-88 has been randomly allotted?

THE COURT:
Yes, it has.

MR. STRICKS:
And where's it been allotted to?

THE COURT:
It's been allotted to "B".

MR. STRICKS:
Okay. So in 98-12 we have the capital indictment, is that correct?

MRS. GRAUGNARD:
Correct, should be.

MR. STRICKS:
And in 98.

THE COURT:
88 (2).

MR. STRICKS:
We have the attempt.

THE COURT:
Attempted first degree murder and the attempted armed robbery in [the In & Out] situation.

MR. STRICKS:

Yes, sir. And is Mr. Juniors going to be arraigned on all of those today?

MRS. GRAUGNARD:
Yes, sir, that would be our request.

MR. STRICKS:
Well, it's possible that he may have other counsel assigned in that "B" matter.

THE COURT:
That is correct.

MR. STRICKS:
We'll take that up later.

Even if the State did exert improper control in the allotment process, we find that any such error would be harmless. At the trial level, Defendant did not seek to recuse the trial judge, and on appeal, Defendant makes no allegations that trial judge was biased.

This assignment of error lacks merit.

**Assignments of Error Nos. 2, 3, and 4**

In his appellate brief, Defendant has combined his next three assignments of error, as the second and third assignments contain similar attacks on the authority of the trial judge and the prosecutors from St. John the Baptist Parish to conduct and to participate in the trial after venue had been changed to Vermilion Parish and the fourth assignment concerns the allotment of the case in Vermillion Parish.[2] Defendant argues that, since the trial judge and prosecutors acted outside their territorial jurisdictions without authorization from the supreme court, their actions in

---

[2]At the outset, we note that Defendant's fourth assignment of error argues that the Fifteenth Judicial District Clerk of Court's Office failed to properly allot the case once it was transferred. To the extent the assignment raises issues regarding random allotment, we find that it lacks merit for the reasons given in the analysis of the first assignment of error. Essentially, Defendant has failed to demonstrate prejudice.

6

Vermilion Parish were invalid. He, thus, contends that his conviction is a nullity due to a structural error that requires remand for a new trial.

Defendant requested and received a change of venue from St. John the Baptist Parish. Although he states in his brief that he intends to raise on post-conviction relief that his attorney should have objected to the site of the transfer, Vermilion Parish, that claim is not before us on appeal. Accordingly, for the purposes of these assignments, we will treat the change of venue as valid.

To the extent that Defendant suggests the Fifteenth Judicial District did not have jurisdiction over his case as contemplated by La.Code Crim.P. art. 859(3), that argument must fail. As the comments to Article 859 state, lack of jurisdiction "embraces such matters as the trial of a juvenile by a regular district court for a noncapital crime, trial of a felony by a city court, or trial in a Louisiana court for a federal crime." Clearly, the Fifteenth Judicial District had the authority to try Defendant's noncapital felony prosecution, a proceeding that originated in the Fortieth Judicial District but was transferred pursuant to the Code of Criminal Procedure. As La.Code Crim.P. art. 611 (emphasis added) provides in part: "All trials shall take place in the parish where the offense has been committed, *unless the venue is changed*." Under La.Code Crim.P. art. 623, "[w]hen a change of venue is granted, the court shall transfer the case to another parish." Additionally, Defendant has not otherwise challenged the qualifications of the presiding judge, who would have conducted the trial had the case remained in its original venue. Further, as noted in our previous discussion, Defendant makes no allegations of bias or prejudice on the part of the trial judge.

7

Defendant's arguments are concerned more with the *implementation* of a change of venue, rather than the validity of such an order or the power of the transferee court to hear the case. Concerning the mechanics of a change of venue, La.Code Crim.P. art. 624 provides:

> When a change of venue is granted, the clerk of the court in which the case is pending shall make and retain copies of all documents relating to the case. He shall deliver the original documents together with certified copies of all minute entries of the case to the clerk of the court to which the case is transferred, who shall enter the case upon the docket of the court, and *the case shall be proceeded with in the same manner as if the proceedings had originally been instituted therein*.

Although this article provides little guidance for courts in implementing a change of venue, our research has revealed cases in which the trial judge has "followed" the case from the original venue to the transferee court. *See State v. M.M.*, 00-1296 (La.App. 3 Cir. 8/29/01), 802 So.2d 43, *writ denied*, 01-3370 (La. 10/4/02), 826 So.2d 1121; *State v. Bolden*, 95-749 (La.App. 3 Cir. 4/17/96), 680 So.2d 6, *writ denied*, 96-1272 (La. 11/22/96), 683 So.2d 286 (pursuant to an *ad hoc* appointment); and *State v. Lee*, 569 So.2d 1038 (La.App. 3 Cir. 1990). Thus, despite the last sentence of Article 624, Louisiana courts have employed different methods in deciding the matter of which trial judge will preside over a transferred case.

As Defendant's arguments cannot support an attack on the subject matter jurisdiction of the Fifteenth Judicial District, nor do they otherwise challenge the qualifications of the presiding judge, we find that any objections to the trial judge's or the prosecutors' authority in this case should have been raised pursuant to a motion to quash, as provided by the general article governing such motions. As La.Code Crim.P. art. 531 states: "All pleas or defenses raised before trial, other than mental incapacity to proceed, or pleas of 'not guilty' and of 'not guilty and not guilty by

8

reason of insanity,' shall be urged by a motion to quash." *See also State v. Dean*, 99-475, p. 3 (La.App. 3 Cir. 11/3/99), 748 So.2d 57, 58-59, *writ denied*, 99-3413 (La. 5/26/00), 762 So.2d 1101, which stated:

> A motion to quash is, essentially, a mechanism whereby pre-trial pleas are urged, i.e. pleas which do not go to the merits of the charge. At a hearing on such a motion, evidence is limited to procedural matters and the question of factual guilt or innocence is not before the court.

Although *Dean* dealt with a different issue than the present case, its description of the basic function of a motion to quash is logical and comports with the language of the article. In *State v. Manning*, 03-1982 (La. 10/19/04), 885 So.2d 1044, *cert. denied*, __U.S. __, 125 S.Ct. 1745 (2005), the supreme court stated that the proper method for contesting a charging instrument is through a pre-trial motion to quash. Thus, the defendant's failure to file such a motion waived the issue for purposes of the appeal.

We further find that Defendant's reliance on *State v. Langley*, 04-269 (La.App. 3 Cir. 12/29/04), 896 So.2d 200, as authority for structural error in the present case is misplaced. In *Langley*, 896 So.2d at 210, the trial judge's actions of absenting himself throughout critical stages of a second degree murder trial resulted in "the inability to adequately and appropriately oversee voir dire and rule on challenges, the necessity of prohibiting contemporaneous objections during closing arguments, . . . and the unavailability of an authoritative figure in the courtroom to immediately squelch disruptions." In the present case, any alleged error could have been easily corrected pre-trial, but absent that correction, it had no effect on the conduct of the trial.

These assignments of error lack merit.

## Assignment of Error No. 5

In his fifth assignment of error, Defendant contends that the trial judge erred in permitting the case to be tried without adjudicating his competency to proceed after a sanity commission had been invoked.

Defendant filed a motion for a mental examination, asserting that he was in need of a mental evaluation to determine his sanity at the time of the commission of the offense and that he may not be competent to assist counsel in his own defense. The trial court granted the motion on January 3, 2000, appointing a sanity commission composed of Dr. Christy Montegut and Dr. Rafael Salcedo. A hearing to consider the matter was scheduled for April 19, 2000. A minute entry for April 19, 2000 indicates the hearing was reset.

Dr. Montegut wrote a letter dated June 21, 2000, stating that she had examined Defendant and that she had determined he was mentally competent. She stated in her letter: "After a careful examination, it is my opinion that Glynn Juniors understands the charges against him and is able to assist his attorney in his own defense. He understands right from wrong and the functions of the court. He is mentally competent to stand trial."

In a letter dated June 21, 2000, Dr. Salcedo stated that his examination revealed that Defendant was not suffering from a "mental disorder that interferes with his ability to understand the Bennet criteria." Accordingly, Dr. Salcedo's letter recommended that "Mr. Green be found competent to proceed to trial." The name "Green" was then crossed out and the name "Juniors" and what appears to be the letter "M" were hand written above the crossed out name.

10

There are no other minute entries or documents in the record that indicate a sanity hearing was held or that the trial court made a finding regarding Defendant's sanity or competency to assist his attorney. However, the matter proceed to trial by jury, and Defendant was found guilty of second degree murder and sentenced to life imprisonment.

Defendant contends that the trial court's failure to resolve the issue of his competency before proceeding to trial was error and that the failure to hold a contradictory hearing was not harmless, as the reports of the sanity commission failed to mention the basis for the assessment of competency. However, Defendant also contends that because the reports of the sanity commission are contained in the record, a retroactive inquiry into his competency may be had and the matter should be remanded for a *nunc pro tunc* hearing.

"When the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed." La.Code Crim.P. art. 642.

The supreme court discussed the need to address a defendant's competency in *State ex rel. Seals v. State*, 00-2738, pp. 5-6 (La. 10/25/02), 831 So.2d 828, 832-33 (citations omitted) (emphasis added), as follows:

> At the outset, we note the longstanding precept that a defendant does not have an absolute right to the appointment of a sanity commission simply upon request. *A trial judge is only required to order a mental examination of a defendant when there are reasonable grounds to doubt the defendant's mental capacity to proceed.* It is well established that "reasonable grounds" exist where one should reasonably doubt the defendant's capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense. To determine a defendant's capacity, we are first guided by La.Code Crim. Proc. arts. 642, 643, and 647.

11

As a general matter, La.Code Crim. Proc. art. 642 allows "[t]he defendant's mental incapacity to proceed [to] be raised at any time by the defense, the district attorney, or the court." The Article additionally requires that "[w]hen the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution . . . until the defendant is found to have the mental capacity to proceed." Next, Article 643 provides in pertinent part, "The court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed . . . ." Last, if a defendant's mental incapacity has been properly raised, the proceedings can only continue under La.Code Crim. Proc. art. 647 which provides:

> The issue of the defendant's mental capacity to proceed shall be determined by the court in a contradictory hearing. The report of the sanity commission is admissible in evidence at the hearing, and members of the sanity commission may be called as witnesses by the court, the defense, or the district attorney. . . .

This protection, however, is not to say that every time a defendant feigns incapacity the court must order a full-blown sanity commission. In *State v. Berry*, 391 So.2d 406, 411 (La.1980), we firmly held that the trial court is granted great discretion in determining if a defendant should be afforded a mental examination to determine capacity. Indeed, where a trial judge finds enough evidence to doubt a defendant's capacity, the court may order the defendant be examined by a single psychiatrist to satisfy requirements of La.Code Crim. Proc. art. 643. There is no need for a sanity commission to be appointed each time capacity of a defendant is questioned.

That being said, questions regarding a defendant's capacity must be deemed by the court to be *bona fide* and in good faith before a court will consider if there are "reasonable grounds" to doubt capacity. *Where there is a bona fide question raised regarding a defendant's capacity, the failure to observe procedures to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial.* At this point, the failure to resolve the issue of a defendant's capacity to proceed may result in nullification of the conviction and sentence under *State v. Nomey*, 613 So.2d 157, 161-62 (La.1993), or a *nunc pro tunc* hearing to determine competency retrospectively under *State v. Snyder*, 98-1078 (La.4/14/99), 750 So.2d 832.

In the case *sub judice*, the trial court appointed a sanity commission whose

members examined Defendant. However, there is no evidence that the court made a

ruling as to Defendant's competency before or after the matter proceeded to trial. In its brief, the State argues that Defendant waived this issue; however, jurisprudence indicates that a waiver is not appropriate once the trial court has made the threshold determination to appoint a sanity commission. *Compare State v. Gowan*, 96-488 (La. 3/29/96), 670 So.2d 1222, and *State v. Mathews*, 00-2115 (La.App. 1 Cir. 9/28/01), 809 So.2d 1002, *writ denied*, 01-2873 (La. 9/13/02), 824 So.2d 1191, *writ denied*, 01-2907 (La. 10/14/02), 827 So.2d 412. Accordingly, we find that the trial court erred by not following La.Code Crim.P. art. 642.

This court must now determine whether a *nunc pro tunc* hearing on the issue of competency is appropriate.

> The federal courts of appeals, although noting that retrospective competency hearings are not favored, have allowed nunc pro tunc hearings on the issue of competency if a meaningful inquiry into the defendant's competency can still be had. The trial court is in the best position to determine whether it can make a retrospective determination of defendant's competency during his trial and sentencing. The determination of whether a trial court can hold a meaningful retrospective competency hearing is necessarily decided on a case-by-case basis. The State bears the burden to show the court that the tools of rational decision are available.

> A "meaningful" determination is possible "where the state of the record, together with such additional evidence as may be relevant and available, permits an accurate assessment of the defendant's condition at the time of the original state proceedings." Additionally, "[w]hen determining whether a meaningful hearing may be held, we look to the existence of contemporaneous medical evidence, the recollections of non-experts who had the opportunity to interact with the defendant during the relevant period, statements by the defendant in the trial transcript, and the existence of medical records. The passage of time is not an insurmountable obstacle if sufficient contemporaneous information is available." The court in *Miller v. Dugger*, 838 F.2d 1530 (11th Cir.1988) noted that it had never given the district courts a list of factors that must be met in order to determine that a nunc pro tunc determination of competency is possible, but stated that relevant factors include time, availability of witnesses and the existence of evidence on the state record about the defendant's mental state at the time.

*State v. Snyder*, 98-1078, pp. 30-31 (La. 4/14/99), 750 So.2d 832, 855 (citations omitted) (footnote omitted).

In the present case, Defendant was examined by the two members of the sanity commission. Additionally, the record indicates that Defendant may have been evaluated by other mental health experts, given defense counsel's statements at a hearing on July 31, 1998, that an "ex-parte motion for funds for psychiatric experts" had already been granted, that a forensic social worker that had been ordered to conduct the investigation was no longer employed by the clinic being used, and that an order substituting a replacement would be presented to the court. Thus, there may be information regarding Defendant's competency that is available to the trial court that is not contained in this appellate record. Accordingly, the trial court may be able to make a retrospective determination regarding Defendant's competency at the time of trial.

For these reasons, we remand this case to the trial court for the sole purpose of determining whether such a hearing is now possible and, if so, to conduct such an evidentiary hearing. If the trial court concludes that Defendant was competent, no new trial is required. If the trial court finds a meaningful inquiry cannot be had, or if it determines after the hearing that Defendant was not competent at the time of his trial, Defendant is entitled to a new trial. *See Snyder*, 750 So.2d 832; *Mathews,* 809 So.2d 1002.

This assignment of error requires further action by the trial court.

## Assignment of Error No. 6

In his sixth assignment of error, Defendant contends that the trial court committed error when it denied a mistrial based upon a misdescribed exhibit being

14

displayed and read to the jury containing, among other things, the bill of indictment charging him with first degree murder and several joint minute entries mentioning aspects of the case, including the fact of other offenses, the possibility of a confession, and the existence of "bad acts" that had not been introduced at trial.

After the testimony of Ronald Williams, the State made the following offering:

> [T]he State would offer to introduce and file the bill under indictment #98, State versus Ronald Williams. We also request that a certified extract of the minutes reflecting the plea of May 11, 1999 be offered into the record. And that would, the indictment and certified extract would be offered as State number, I believe, 17.
>
> In addition, Your Honor, the State would offer, introduce, and file the original plea agreement contained in that record, which I have marked with a piece of blue note paper consisting of three pages and ask that a photocopy be substituted for the original for publication to the jury.
>
> At this time, Your Honor, the State would request that the state evidence be published to the jury.

Defense counsel indicated he had no objection.

While the jury viewed the exhibits, the defense attorney questioned whether the jurors were viewing the indictment. He then informed the court that he had never seen the exhibit. Defense counsel subsequently examined the exhibits and moved for a mistrial, stating the following:

> There is a—When the district attorney offered State's Exhibit 17-A, what the—what the Defense offered was the plea form and a copy of the minutes of the plea. What has been presented to the jury, however, is a first degree murder indictment of Glynn Juniors and Ronald Williams together,—
>
> . . . .
>
> —the entire history of this case, including minutes where it says, um, motion to reveal the deals, dash, note—the minutes of this case, all of which is highly prejudicial, none of which is admissible, and is far beyond what was expected to be included as an exhibit which was the minutes of the guilty plea and the sentencing.

15

Now, an indictment of Ronald Williams, we have no problem with. But this is a—What the jury has just seen now is the joint indictment, and—Just one moment. So I would like the Court to look at what has been marked as this Exhibit D-7, which included the minutes of the sentencing, the guilty plea of . . . Ronald Williams, but what was shown to the jury was far more and highly prejudicial.

Defense counsel continued, indicating that it "was never said in court what the exhibit was going to be, and certainly, not all of the minutes for the entire case since its inception." Defense counsel indicated that he did not know who prepared the exhibit and, had he seen the exhibit before it was presented to the jury, he would have objected to its introduction into evidence.

After hearing the arguments of counsel, the trial court took the matter under advisement. The motion was subsequently denied. The exhibit displayed to the jury was made Court Exhibit 1 and a corrected exhibit replaced the improper exhibit that was presented to the jury. The trial court noted that "[i]t was never the intention of the State to offer what is now published to the jury." Additionally, the trial court read portions of an admonishment, proposed by defense counsel, regarding the exhibit at issue to the jury. In admonishing the jury, the trial court stated:

Mr. Glynn Juniors is charged with Second Degree Murder.

The fact that two defendants are charged in an Indictment is not any evidence of guilt of the accused.

The fact that defendants have been in court on the case before this trial is not to be considered by you in any way.

And the fact that lawyers have filed papers or made statements in pre-trial proceedings is not to be considered by you in any way.

The record shows that Ronald Williams was indicted for being a Principal to First Degree Murder and pleaded guilty to being a Principal to First Degree Murder.

Defendant contends that the trial court erred by not granting a mistrial based upon La.Code Crim.P. art. 775, which provides in part that a mistrial shall be granted "when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771." We disagree. As the court stated in *State v. Sloan,* 29,787, p. 8 (La.App. 2 Cir. 9/24/97), 701 So.2d 995, 999, *writ denied*, 97-2601 (La. 2/6/98), 709 So.2d 731 (citations omitted):

> A mistrial is a drastic remedy and is warranted only when the error results in substantial prejudice sufficient to deprive the defendant of any reasonable expectation of a fair trial. The decision to grant or deny a mistrial for prejudicial conduct rests within the trial court's discretion and will not be disturbed absent an abuse of discretion.

We find no abuse of the trial court's discretion in denying a mistrial based upon the jurors viewing the documents described, given the trial court's thorough admonition.

This assignment of error lacks merit.

**Assignment of Error No. 7**

In his seventh assignment of error, Defendant contends that he was convicted by a non-unanimous verdict in violation of the Sixth Amendment right to trial by jury in combination with the Fourteenth Amendment due process right.

Louisiana Constitution Article I, § 17(A) provides that a case "in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict." Additionally, La.Code Crim.P. art. 782(A) provides in part that "[c]ases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict." Defendant was charged with second degree

17

murder, which is punishable by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La.R.S. 14:31. A jury of twelve was empaneled in the case *sub judice*, and eleven of those jurors concurred in the verdict. Accordingly, the proper number of jurors concurred in the verdict.

We note that the second circuit in *State v. Divers*, 38,524, p. 26 (La.App. 2 Cir. 11/23/04), 889 So.2d 335, 353 *writ denied*, 04-3186 (La. 4/8/05), 899 So.2d 2, recently rejected a similar argument, stating: "Non-unanimous jury verdicts for twelve person juries are not unconstitutional." The second circuit cited as authority *Apodaca v. Oregon*, 406 U.S. 404, 410-11, 92 S.Ct. 1628, 1632-33 (1972) (emphasis added) (footnote omitted), wherein the United States Supreme Court stated:

> [T]he purpose of trial by jury is to prevent oppression by the Government by providing a "safeguard against the corrupt or overzealous prosecutor and against the complaint, biased, or eccentric judge." Duncan v. Louisiana, 391 U.S. [145] at 156, 88 S.Ct. [1444] at 1451 [(1968)]. "Given this purpose, the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen . . ." Williams v. Florida, *supra*, 399 U.S. [78] at 100, 90 S.Ct. [1893] at 1906 [(1970)]. *A requirement of unanimity, however, does not materially contribute to the exercise of this commonsense judgment.* As we said in *Williams*, a jury will come to such a judgment as long as it consists of a group of laymen representative of a cross section of the community who have the duty and the opportunity to deliberate, free from outside attempts at intimidation, on the question of a defendant's guilt. *In terms of this function we perceive no difference between juries required to act unanimously and those permitted to convict or acquit by votes of 10 to two or 11 to one.* Requiring unanimity would obviously produce hung juries in some situations where nonunanimous juries will convict or acquit. But in either case, the interest of the defendant in having the judgment of his peers interposed between himself and the officers of the State who prosecute and judge him is equally well served.

*See also Johnson v. Louisiana*, 406 U.S. 356, 359, 92 S.Ct. 1620, 1623 (1972), in which the United States Supreme Court stated that it had "never held jury unanimity to be a requisite of due process of law."

Nonetheless, Defendant argues that *Apodaca* has been implicitly overruled by recent jurisprudence from the United States Supreme Court. We disagree, noting that the Court has not expressly questioned its ruling in *Apodaca* and, further, that the cases cited by Defendant do not address whether a unanimous jury verdict is required. Those cases concern what issues must be decided by a jury.[3]

This assignment of error lacks merit.

### Decree

For the above reasons, Defendant's conviction and sentence are conditionally affirmed pending the outcome on remand as explained in this opinion.

**CONVICTION AND SENTENCE CONDITIONALLY AFFIRMED; REMANDED WITH INSTRUCTIONS**.

---

[3]In the cases cited by Defendant, the United States Supreme Court held that the following issues must be submitted to a jury and proved beyond a reasonable doubt: *Jones v. U.S.* 526 U.S. 227, 119 S.Ct. 1215 (1999) (elements of the offense); *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000) (any fact that increases the penalty beyond the statutory maximum); and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428 (2002) (aggravating factors required for imposition of the death penalty).