859 So.2d 911 (2003)
STATE of Louisiana, Appellee,
v.
Nolan C. TURNER, III, Appellant.
No. 37,162-KA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 2003.
*916 Peggy J. Sullivan, Monroe, for Appellant.
Nolan C. Turner, III, Pro Se.
Paul J. Carmouche, District Attorney, Traci Moore, Larrion Hillman, J. Thomas Butler, Assistant District Attorneys, for Appellee.
Before WILLIAMS, STEWART and TRAYLOR (Pro Tempore), JJ.
WILLIAMS, J.
Following a jury trial, the defendant, Nolan C. Turner, III, was found guilty as charged of first degree murder. He was sentenced to serve life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence with credit for time served. Turner now appeals his conviction and sentence. For the following reasons, we affirm.

FACTS AND PROCEDURAL BACKGROUND
On July 8, 1999, Jason Heath Winn ("Heath") and his father, Doyle Wayne Winn, were working in their tire store located on Jewella Avenue, in Shreveport, Caddo Parish, Louisiana. Heath's eleven-year-old brother, Garrett, was inside the store playing with his friend, Bennett Berryman, who was about six years old. All four individuals were in the office when two men with handguns walked into the store. One man had short hair and one had long, shoulder-length hair. The man with the long hair shut the overhead door in the office area. Heath immediately handed the long-haired man approximately $140 cash. The men then told the victims to "get to the back." One of the assailants told the victims to lie down. Heath complied; however, Winn began to scuffle with the long-haired man and told Heath to get up. As Heath attempted to get up, he was shot twice by the long-haired man. Garrett saw the long-haired man fire the first shot at Heath, but Garrett could only hear the other shots. Heath saw the longhaired man shoot his father twice. As the two men were fleeing the building on foot, the short-haired man grabbed some of the money that had fallen to the floor. Heath heard two more gunshots. Winn received two gunshot wounds and died at the scene. Heath also was shot twice and is now a paraplegic, confined to a wheelchair.
On the day of the incident, at approximately 5:00 p.m., Linda Tyler was leaving her job at Morning Star Baptist Church, which was located across the street from the tire store. Tyler testified that as she waited in her vehicle for the traffic to clear, she noticed that the door to the tire store was partially closed. She thought that this was unusual for that time of day. Tyler observed a man come out of the tire store, stand outside for a moment and then run down the street. She then observed a second man, who had long hair, back out of the tire store shooting a gun. The longhaired man ran across Jewella Avenue toward Tyler and then down Baxter Street. Tyler drove her vehicle onto Jewella Avenue and down Baxter street in an attempt to follow the long-haired man. However, she had to turn around because of construction work in the area. As Tyler drove back up Baxter Street, the longhaired *917 man walked toward and "right by" her.
Allen Waites, a road construction worker, was assigned to Baxter Street at the time of the shooting. Waites testified that shortly after hearing gunshots, he saw a man running down Baxter Street with a handgun in his pants pocket.
During the course of his investigation of the armed robbery and murder, Detective Ronnie Jeter of the Shreveport Police Department, Office of Special Investigations, developed the defendant as a suspect. He prepared a computer-generated lineup, which was printed in both color and black and white formats. Detective Jeter testified that he followed the proper procedure with regard to showing the lineup to Tyler and Bennett, both of whom positively identified the defendant's photograph (Number 5) as the long-haired man who had committed the crime. When Bennett was asked if anyone in the lineup was the person he had seen at the crime scene, Bennett pointed to photograph number five. Ruby Smith, Bennett's cousin/guardian, wrote for the six year old and indicated on the back of the photographic lineup that Bennett had chosen photograph number five.
On July 12, 1999, Detective Jeter questioned the defendant at the police station. Defendant was advised of his Miranda rights, but refused to sign a written waiver of his rights. However, the defendant gave a statement to Detective Jeter wherein he indicated that during the night before the crime and most of the day of the crime, he was in Bossier City, Louisiana. He stated that during the time of the crime, he was at Ike's Barber Shop, where he contacted one Santanian Dixon.
Isaiah Shine, the proprietor of Ike's Barber Shop, testified that he was the last person to leave his barber shop on the day of the crime. According to Shine, he left at about five-thirty or six o'clock that evening. When Shine left, there was no one outside the shop and he had not seen the defendant that day. Santanian, who worked with Shine and was a good friend of the defendant, testified that he had seen the defendant at the shop earlier in the day, but he had not seen him that afternoon.
At trial, Heath positively identified the defendant as the person who had shot and killed his father. Tyler also positively identified the defendant as the person she had seen shooting a gun and running from the tire store on the day of the crime. The defense did not present any evidence during the guilt phase of the trial. At its conclusion, the defendant was unanimously convicted of first degree murder.
After the penalty phase of the trial, the jury returned a recommendation of life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. Motions for post-verdict judgment of acquittal, modification of verdict and new trial were filed, submitted and denied. In accordance with the jury's recommendation, the defendant was sentenced to serve life imprisonment without the benefit of parole, probation or suspension of sentence. The defendant appeals.

DISCUSSION
Assignments of Error Numbers 1 and 2:
By these assignments, the defendant contends the evidence was insufficient to support his conviction of first degree murder. He argues that there was no physical evidence introduced at trial to prove that he shot the victims. He contends the only evidence of his identity as the perpetrator was the identification by three state witnesses: Bennett, Heath and Tyler. The defendant argues that the eyewitness identifications and photographic lineups were *918 inconsistent and unreliable. Specifically, the defendant argues that because of Bennett's young age and the fact that he was crying during the crime, his identification of the defendant from a photographic lineup was unreliable. He argues Heath's identification was unreliable because it was made after Heath's release from the intensive care unit, while he was on medication. The defendant asserts that Tyler's identification from the photographic lineup was suspect because her account of the facts of the crime was inconsistent. The defendant argues that the in-court identifications by Heath and Tyler were unreliable because of their limited opportunity to view him during the crime and shortly thereafter. He also contends Garrett described him as having one or more gold teeth and he does not have any gold teeth. According to the defendant, Garrett and Detective Jeter gave conflicting testimony regarding whether Garrett was shown a photographic lineup in the hospital. Finally, also with regard to his sufficiency of the evidence challenge, the defendant argues that the state failed to prove that he possessed the specific intent to kill the victim.
The question of the sufficiency of the evidence is properly raised by a motion for post-verdict judgment of acquittal. LSA-C.Cr.P. art. 821; State v. Gay, 29,434 (La.App.2d Cir.6/18/97), 697 So.2d 642. The record shows that the defendant properly raised the issue of the sufficiency of the evidence in the trial court in a motion for post-verdict judgment of acquittal, which was denied by the trial court. When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency of the evidence issues first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court can neither assess the credibility of witnesses nor re-weigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson standard requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008 (on rehearing), writ denied, 96-1807 (La.2/21/97), 688 So.2d 520.
A positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App.2d Cir. 4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12; State v. Miller, 561 So.2d 892 (La.App. 2d Cir.), writ denied, 566 So.2d 983 (La.1990).
*919 In the present case, the defendant was charged by a "short form" indictment with the first degree murder of Doyle Wayne Winn. Our first degree murder statute, LSA-R.S. 14:30, provides in pertinent part:
A. First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, second degree kidnapping, aggravated escape, aggravated arson, aggravated rape, forcible rape, aggravated burglary, armed robbery, drive-by shooting, first degree robbery, simple robbery, or terrorism.
....
(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person.
....
The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488; State v. Johnson, 27,522 (La.App.2d Cir.12/06/95), 665 So.2d 1237.
Defendant is requesting that this court re-weigh the evidence and reassess the credibility of the witnesses that testified against him. However, utilizing our standard of review, we find the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant committed the first degree murder of the victim in violation of both LSA-R.S. 14:30A(1) and LSA R.S. 14:30A(3). It is undisputed that the victim was killed by a bullet fired from a gun during the crime. It is also undisputed that the killing was committed during the course of an armed robbery. LSA-R.S. 14:30A(1). The facts presented at trial support the conclusion that the perpetrators entered the place of business brandishing guns and took $140.00 from the victim.
The defense argues that the state failed to prove each element of LSA-R.S. 14:30A(3), which requires that the perpetrator have a specific intent to kill or to inflict great bodily harm upon more than one person. Clearly, the state proved that the defendant's discharge of a firearm at close range, while directly aimed at Heath and his father, is indicative of a specific intent to kill or inflict great bodily harm upon more than one person.
The fact that the defendant was the perpetrator was proved by eyewitness testimony from Heath and Tyler, both of whom positively identified the defendant in court. Heath most certainly could be expected to remember the face of the man who killed his father and left him crippled for life. The testimony of one witness alone may be considered sufficient to support a conviction; however, the state presented the trial testimony of two eyewitnesses. The other witness, Tyler, not only observed the defendant fire gunshots and flee the tire store, but also followed the defendant down the street and was able to get a much closer look at him. Additionally, the defendant's identity as the perpetrator was supported by trial testimony that the defendant was identified from photographic lineups by Tyler and Bennett. Bennett, even considering his young age and emotional reaction to the violent crimes he had witnessed, picked the defendant's picture from the photographic lineup, without any hesitation. The defense attempted to confuse the jury with questions about a gold tooth. A review of the record reveals that Garrett was the only witness who gave Detective Jeter a description *920 of a man with a gold tooth. We note that the eleven-year old had witnessed the murder of his father, the wounding of his brother and obviously feared for his own life during the entire ordeal. This court cannot assess the credibility of the witnesses or re-weigh the evidence with regard to the identification of this defendant as the perpetrator of this crime. The jury's decision to accept or reject the testimony of the witnesses in whole or in part with regard to the defendant's identity will be given great deference. The state's case negated any reasonable probability of misidentification. These assignments of error are without merit.
Assignment of Error Number 3:
By this assignment, the defendant contends the trial court erred in denying his pre-trial motion to suppress the results of the photographic lineups.
After the hearing on the motion to suppress the identification of the defendant, the trial court denied the motion as to all three witnesses. The court noted that not only were the identifications free of any undue prejudice or suggestion, but each witness testified to the trial court's satisfaction that he or she was certain of the identification.
The defendant contends the photographic lineups were unreliable because both his black and white and color photographs, which were both located in position number five, contained markings to unduly focus attention on them. The record reflects that there was a glare on the color photograph and a streak on the black and white photograph. Specifically, the defendant contends Tyler's testimony with regard to the photographic lineup was inconsistent and unreliable. Also, the defendant argues that Heath's identification was made while he was still in the hospital, and without any inquiry into whether he was on medication at the time he was asked to view the lineup. Further, the defendant contends Bennett's testimony regarding the circumstances surrounding his identification of the defendant in the photographic lineup was inconsistent with the testimony of his guardian, Ruby Smith.
This court in State v. Sewell, 35,549 (La.App.2d Cir.2/27/02), 811 So.2d 140, writ denied, XXXX-XXXX (La.3/21/03), 840 So.2d 535, set forth the law applicable to a motion to suppress an out-of-court identification:
The defendant has the burden of proof on a motion to suppress an out-of-court identification. LSA-C.Cr.P. art. 703D. When reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion, but also may consider pertinent evidence given at trial. State v. Barber, 32,894 (La.App.2d Cir.12/30/99), 749 So.2d 917, writ denied, 00-0519 (La.11/27/00), 775 So.2d 441; State v. Goodjoint, 30,727 (La.App.2d Cir.6/24/98), 716 So.2d 139; State v. Reed, 97-812 (La.App. 1st Cir.4/8/98), 712 So.2d 572, writ denied, 98-1266 (La.11/25/98), 729 So.2d 572.
To suppress an identification, the defendant must first prove that the identification procedure was suggestive. State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801, cert. denied, Broadway v. Louisiana, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000), citing State v. Prudholm, 446 So.2d 729 (La.1984).
In State v. Johnson, 33,174 (La. App.2d Cir.5/10/00), 759 So.2d 1052, writ denied, XXXX-XXXX (La.9/21/01), 797 So.2d 60, this court held that a lineup is unduly suggestive if the procedure focuses attention on the defendant. Even if the procedure used was suggestive, an *921 identification will be admitted if, under the totality of the circumstances, the identification is found to be reliable. State v. Johnson, supra, citing State v. Savage, 621 So.2d 641 (La.App. 2d Cir. 1993), writ denied, 93-2850 (La.9/2/94), 642 So.2d 1282.
....
This court in State v. Barber, supra, applied the factors set forth in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), to determine that the trial court did not err in denying the motion to suppress. The factors considered in assessing the reliability of the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of his or her prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation. Manson v. Brathwaite, supra. In Barber, supra, any suggestiveness of the identification procedures used was found to have been outweighed by the overall reliability of the identification. Under the totality of the circumstances presented on the Barber record, this court found that there was no substantial likelihood of misidentification. Id.

There is no requirement that each person utilized to compile a photographic lineup have the exact physical characteristics as the defendant. State v. Lee, 35,333 (La. App.2d Cir.1/23/02), 807 So.2d 359, writ denied, XXXX-XXXX (La.1/31/03), 836 So.2d 60.
The record, including evidence presented at both the hearing on the motion to suppress and at the trial, supports the trial court's ruling that the photographic lineups were not unduly suggestive. A review of the color lineup photographs shows that four of the six photographs, including the defendant's photograph had some type of glare or shine on the forehead and the other three photographs had some highlights on the nose and/or mouth. At the hearing on the motion to suppress, even the defense counsel noted that the glare was not confined to the defendant's photograph. The existence of a glare or shine on the defendant's lineup photograph in this instance was certainly not suggestive because it did not focus attention on the defendant. The same conclusion applies to the black and white photographic lineup, which was viewed only by Tyler. An examination of the lineup reveals that a vertical "streak" or line, similar to the one on the defendant's photograph, also appeared on photograph numbers two, three and six. Even if the lineups had been suggestive in nature, under the totality of the circumstances, the trial court did not err in finding the identifications reliable. An analysis of the factors set forth in Manson v. Brathwaite, supra, weigh in favor of a determination that the identifications were reliable. This assignment is without merit.
Assignment of Error Number 4:
By this assignment, the defendant contends that the trial court erred in denying his motion to suppress his statements to Detective Jeter. He argues that the totality of the circumstances surrounding his making of the statements does not indicate that he voluntarily waived his right to remain silent. He argues that he did not sign a waiver of rights form and there is no recorded statement from which to ascertain that he was advised of, understood and waived his rights.
At a hearing on a motion to suppress a confession, the state bears the burden of proving beyond a reasonable *922 doubt the free and voluntary nature of the confession. State v. Hills, 354 So.2d 186 (La.1977); State v. Roddy, 33,112 (La. App.2d Cir.4/7/00), 756 So.2d 1272, writ denied, XXXX-XXXX (La.5/11/01), 791 So.2d 1288.
Before a confession or an inculpatory statement can be introduced into evidence, the state must affirmatively prove that it was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451; LSA-C.Cr.P. art. 703(D); State v. Roddy, supra. The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Roddy, supra.
In State v. Jackson, 381 So.2d 485 (La.1980), and State v. Morvant, 384 So.2d 765 (La.1980), the Louisiana Supreme Court stated the principles under which the admissibility of a confession must be judged. As a matter of federal constitutional law, any confession obtained by any direct or implied promises, however slight, or by the exertion of any improper influence, must be considered involuntary and inadmissible. Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897); State v. Roddy, supra.
The admissibility of a confession is a question for the trial court. Id. When determining admissibility, the trial court's conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on appeal unless they are not supported by the evidence. State v. Benoit, 440 So.2d 129 (La.1983); State v. Dailey, 607 So.2d 904 (La.App. 2d Cir. 1992), citing State v. Jackson, supra; State v. Roddy, supra. We place great weight upon the trial court's factual determinations because of its opportunity to observe witnesses and assess credibility. State v. Roddy, supra; State v. Crews, 28,153 (La. App.2d Cir.5/8/96), 674 So.2d 1082. Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily. State v. Henderson, 31,986 (La.App.2d Cir.8/18/99), 740 So.2d 240.
At the hearing on the motion to suppress the defendant's statements, Detective Jeter testified that approximately one hour after the defendant's arrest, he took a statement from the defendant in his office at the police station. Before he took the defendant's statement, Detective Jeter read the defendant his Miranda rights, using a waiver of rights form derived from the Louisiana District Attorney's Handbook as a reference. Detective Jeter testified that the line for the defendant's signature was blank and the notation indicated that defendant refused to sign the waiver of rights form. Detective Jeter testified that he made markings on the form to indicate that the defendant agreed to answer his questions without an attorney. Detective Jeter stated that even though the defendant refused to sign the waiver, he consented to give a statement. Detective Jeter testified that he did not make any promises, threats or inducements to obtain the defendant's statement. He also testified that the defendant was not abused and was allowed to use the police station facilities.
During the first statement, the defendant advised Detective Jeter that he was in Bossier City the entire night before the crime. The defendant stated that the next day, he went to Ike's Barber Shop in Mooretown, where he contacted Santanian Dixon and Isaiah Shine. Detective Jeter then contacted Dixon and Shine, who could not confirm the defendant's alibi. Thereafter, Detective Jeter spoke with the defendant in the interview room of the city *923 jail and told him that his alibi was not corroborated. Detective Jeter related that the defendant "could not believe that `they' would say that." When Detective Jeter asked the defendant when he last visited Ike's, he responded that it "was a long time." Before his second statement, Detective Jeter then asked the defendant if he still understood his rights and he responded in the affirmative. The detective then asked the defendant if he wanted a lawyer. To this, the defendant responded negatively. Again, Detective Jeter stated that no threats or inducements were made. After Detective Jeter refreshed his memory from his police report, he testified that he asked the defendant whether he had ever been to the tire store where the crime occurred. The defendant stated that he had worked at the tire store approximately two years prior to the crime, but had not been there since that time. When Detective Jeter asked the defendant if he knew the victims, he related that he had seen them "while going down the street," but he had not "stopped there" since they (referring to the Winns) owned the tire store. Detective Jeter asked the defendant did he know why anyone would say that he was involved in the crime, and the defendant responded that it was because of his "looks" and his "past history." Detective Jeter explained that the defendant's statement was not recorded because the defendant had refused to sign the waiver of rights form and Detective Jeter did not think the defendant would say anything.
The evidence of record supports the trial court's denial of the defendant's motion to suppress his statements to Detective Jeter. The state met its burden of proving beyond a reasonable doubt that the statements were freely and voluntarily given and the defendant was advised of his Miranda rights prior to any questioning. In ruling on the motion to suppress, the trial court expressly stated that it did not have any reason to disbelieve the police officer's testimony. As stated above, this Court places great weight upon the trial court's factual determinations because of its opportunity to observe witnesses and assess credibility. Because we find no error in the trial court's ruling, this assignment is without merit.
Assignments of Error Numbers 5 and 6:
By these assignments, the defendant contends the trial court erred in refusing to grant a mistrial pursuant to LSA-C.Cr.P. art. 775, because of outbursts and disturbances by spectators during the trial. The defendant also contends the trial court could have prevented the disturbances by granting his "Motion To Enjoin The Victim's Family Members From Showing Emotion In The Courtroom."
In State v. Pratt, 32,991 (La. App.2d Cir.3/1/00), 754 So.2d 355, this Court dealt with a situation similar to the one in the case at bar and set forth the applicable law:
LSA-C.Cr.P. art. 771 provides that in the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark *924 or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
LSA-C.Cr.P. art. 775 provides that a mistrial shall be ordered when prejudicial conduct in the courtroom makes it impossible for the defendant to obtain a fair trial. Because a mistrial is a drastic remedy, it should be granted only when the error resulted in substantial prejudice sufficient to deprive the defendant of any reasonable expectation of a fair trial. State v. Sloan, 29,787 (La.App.2d Cir.09/24/97), 701 So.2d 995; State v. Cotton, 29,101 (La.App.2d Cir.01/22/97), 687 So.2d 1074. The decision to grant or deny a mistrial for prejudicial conduct rests within the trial court's discretion and will not be disturbed absent an abuse of discretion. State v. Smith, 433 So.2d 688 (La.1983); State v. Sloan, supra; State v. Bryant, 29,344 (La.App.2d Cir.05/07/97), 694 So.2d 556.
In State v. Wessinger, 98-1234 (La.5/28/99), 736 So.2d 162, rehearing denied, certiorari denied, 528 U.S. 1050, 120 S.Ct. 589, 145 L.Ed.2d 489, rehearing denied, 528 U.S. 1145, 120 S.Ct. 1001, 145 L.Ed.2d 947,[1] during the penalty phase of the trial, the trial court denied defense's motion for mistrial following emotional outbursts by the capital murder victim's mother. Specifically, the victim's mother burst into tears after the victim's sweater was introduced into evidence. Also, there was another outburst in the courtroom after the tape of the victim's 911 call was played for the jury. Upon hearing the tape of his daughter's last moments alive, the victim's father shouted out "son of a bitch." The supreme court concluded that the trial court's denial of the defendant's motion for a mistrial was not an abuse of discretion stating:
Defendant does not demonstrate, and we cannot ascertain from the record, how these outbursts could have prejudiced him to such a degree that a mistrial was warranted. Again, we must credit the jurors with the good sense and fairmindedness to see these outbursts for what they were, the natural and irrelevant expression of human emotion, and not let the outbursts influence their decision on defendant's penalty. State v. Wessinger, supra. A review of this record does not reveal that the trial court erred in denying the defendant's motion to enjoin the victim's family from showing emotion in the courtroom. There is nothing in this record that contradicts the trial court's finding that it had no reason to doubt that the state had adequately cautioned the family members and witnesses against such outbursts.
With regard to the defendant's motion for mistrial because of the spectators' outbursts and disturbances, the record supports the trial court's ruling that the defendant has shown no prejudice from the denial of his motion. The defense has failed to show that such a drastic remedy as mistrial was warranted. Although the content or nature of the outburst was not transcribed or otherwise described in the record, the record shows that an unknown female spectator was immediately removed from the courtroom. The record does not show that she created any further disturbance of the proceedings. As previously stated by our supreme court, the jurors must be credited *925 with the common sense and fair-mindedness to see these outbursts for what they were, the natural and irrelevant expression of human emotion, and not let the outbursts influence their decision. Furthermore, even though no admonishment was given, none was requested by the defense. Thus, this assignment is without merit.
Assignment of Error Number 7:
By this assignment, the defendant contends the trial court erred in denying the motion for mistrial based on the state's witness' indirect reference to another crime committed by the defendant. He argues that Detective Jeter's statement that the defendant was arrested should be considered an indirect reference to another crime committed by the defendant, and should not be differentiated because the reference was not to an actual conviction. The defendant asserts that the improper reference should have been anticipated by the state. He argues that it was the state's responsibility to insure that the witness was cautioned outside the presence of the jury to avoid references to other crimes committed by the defendant.
LSA-C.Cr.P. art. 770 addresses prejudicial remarks as a basis for a mistrial, and provides in part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
....
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
....
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
LSA-C.Cr.P. art. 775 provides, in pertinent part:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
....
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
....
As a general rule, a law enforcement officer's unsolicited, unresponsive reference to another crime by the defendant is not the comment of a "court official" under the provisions of LSA-C.Cr.P. art. 770. State v. Goods, 403 So.2d 1205 (La.1981); State v. Scott, 34,949 (La. App.2d Cir.1/25/02), 823 So.2d 960. Absent a showing of a pattern of unresponsive answers or improper intent by the law enforcement officer or prosecutor, such comments would not fall within the purview of a mistrial pursuant to LSA-C.Cr.P. art. 771. State v. Goods, supra; State v. Scott, supra.
The proper remedy for inappropriate remarks by a law enforcement officer is an admonishment, directing the jury to disregard the remarks. State v. Keys, 29,369 (La.App.2d Cir.5/07/97), 694 So.2d 1107, writ denied, 97-1387, 97-1497 (La.10/31/97), 703 So.2d 21; State v. Harris, 28,517 (La.App.2d Cir.8/21/96), 679 So.2d 549, writ denied, 96-2954 (La.9/26/97), 701 So.2d 975. The trial court should order a mistrial under Article 771 only if it determines that an admonition is not adequate to assure the defendant a fair trial. Mistrial is a drastic *926 remedy and, unless mandatory, is committed to the sound discretion of the trial judge. State v. Keys, supra; State v. Parker, 27,417 (La.App.2d Cir.9/27/95), 661 So.2d 603, writ denied, 95-2576 (La.2/16/96), 667 So.2d 1049.
Both the state and defense cited State v. Powell, 598 So.2d 454 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (La.1992), during argument on the motion. In Powell, as the prosecutor was asking the detective about the photographic lineup he had shown the witnesses, the detective responded that he knew it was the defendant's photograph because, "I removed it from the identification section at Monroe Police Department, myself. It has a number on it. The number corresponds with his arrest record." Defense counsel objected, cited the mandatory mistrial provisions of Article 770(2) and unsuccessfully argued that the answer implied that Powell had "some type of record." On appeal, this Court noted:
Arguably, the fact that the police have the defendant's photo on file could be understood as evidence of a prior arrest or conviction. However, courts have consistently held that any prejudice from the use of a file photo or "mug shot" is cured by an appropriate admonition. State v. Davis, 407 So.2d 702 (La.1981); State v. Curry, 390 So.2d 506 (La.1980); State v. Clark, 581 So.2d 747 (La.App. 4th Cir.), writ denied, 590 So.2d 63 (La. 1991); State v. Grigsby, 445 So.2d 176 (La.App. 3d Cir.1984). Detective Fisher's comment linking Powell's photo to his arrest record was indirect at best and easily remedied by the admonition.
Similarly, in State v. Jones, 332 So.2d 466 (La.1976), a police officer testified at trial that mug shots on file with the police department were used to identify the defendant. The defendant moved for a mistrial pursuant to LSA-C.Cr.P. art. 770. The supreme court reiterated that Article 771 was the applicable article, not Article 770. The court then found no bad faith on the part of the prosecution or the police officer. It found that any prejudice to the defendant was cured by an admonition by the trial court. Therefore, a mistrial was not required.
In the present case, the record does not reveal a pattern of unresponsive answers or improper intent by the law enforcement officer or prosecutor. Thus, the comment does not fall within the purview of mistrial pursuant to LSA-C.Cr.P. art. 770. The officer gave an unsolicited response during direct examination which inadvertently conveyed information to the jury that the defendant had been arrested previously. Any prejudice that resulted from the officer's comment was curable through a cautionary instruction, which was offered to the defense and declined. Thus, the record does not show that the trial court abused its discretion in denying the motion for mistrial. This assignment is without merit.
Assignment of Error Number 8:
By this assignment, the defendant contends the trial court erred in refusing to grant defendant's challenge for cause with regard to two prospective jurors.
With regard to prospective juror, Kevin Carter, the defendant makes a "reverse Witherspoon" complaint. Defendant argues that because Carter stated on voir dire that he would not consider a life sentence and would automatically vote for the death penalty under the facts of this case, defendant's challenge for cause should have been granted. In reference to prospective juror Sharp, the defendant argues that the prospective juror expressed a predisposition to the death penalty, and, therefore, under Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 *927 (1968), defendant's challenge for cause should have been granted.
In State v. Dunn, XXXX-XXXX (La.11/1/02), 831 So.2d 862, our supreme court explained Witherspoon and reverse Witherspoon complaints:
The proper standard for determining when a prospective juror may be excluded for cause because of his views on capital punishment is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985); State v. Sullivan, 596 So.2d 177 (La.1992), rev'd. on other grounds sub nom; Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The basis of the exclusion under LSA-C.Cr.P. art. 798(2)(a)(b), which incorporates the standard of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), as clarified by Witt, is that the juror "views would `prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" In a "reverse-Witherspoon" context, the basis of the exclusion is that the juror "will not consider a life sentence and ... will automatically vote for the death penalty under the factual circumstances of the case before him...." State v. Robertson, 630 So.2d 1278 [Footnote omitted]. If a prospective juror's inclination toward the death penalty would substantially impair the performance of the juror's duties, a challenge for cause is warranted. State v. Ross, 623 So.2d 643, 644 (La.1993).
However, the court has consistently held that where the jury did not recommend the death penalty, defendant is insulated from the death penalty, and there is, therefore, no valid Witherspoon complaint. State v. Edwards, 406 So.2d 1331 (La.1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982); State v. Plaisance, XXXX-XXXX (La.App. 4th Cir.3/6/02), 811 So.2d 1172, 1187, writ denied, XXXX-XXXX (La.11/27/02), 831 So.2d 270. Here, the defendant has no valid Witherspoon complaints because the jury did not recommend the death penalty. This assignment of error is meritless.
Assignment of Error Number 9:
By this assignment, the defendant contends the trial court erred in summarily excusing one of the sworn jurors.
The jury was sequestered during the course of the defendant's trial. After the close of evidence, but before the jury was charged, the trial court stated for the record:
[O]ne of the jurors had an emergency at home regarding a medical situation. The Court with only minimum information to both counsel is at this time excusing Ms. Delpapa from this jury and will use the alternate Mr. Talbot. If I need to say anymore on the record, I will do it after the case is concluded, but at this time the Court on its own motion will now relieve Ms. Delpapa and seat Mr. Talbot, the first alternate, in her place. It previously said that Ms. Lowe and Ms. Walters would be released after the end of the day. Given the situation of Ms. Delpapa, I will reserve the right to revisit this at that (sic) conclusion of today.
Defense counsel asked for a notation on the record that the defendant was not present. The trial court so noted, and also noted the defendant's objection with regard to the court's ruling releasing the juror.
*928 After the jury was charged, and in the presence of the defendant, the trial court addressed his earlier ruling with regard to juror Delpapa:
The Court: I do want to now on the record address Ms. Delpapa and the Court's excusing of Ms. Delpapa. The Court first wants to note that Mr. Turner was not in court. The Court made the error of overlooking the fact that Mr. Turner was (sic) present. Let me try to recant while Mr. Turner is present what I said regarding this Court excusing Ms. Delpapa. Upon returning from lunch today, the Court was advised by the bailiff that Mr. Delpapa, the spouse of juror number one, Ms. Delpapa, for medical reasons had to go to the hospital or in an emergency fashion. Without conferring with counsel, the Court determined that Ms. Delpapa had not been advised, but it was the Court's understanding and information that Mr. Delpapa cared for either the parents or the in-laws for the juror. Given the totality of the circumstances, the Court deemed this an emergency situation involving Ms. Delpapa. The Court will acknowledge that the Court had no information whether or not the medical situation was life-threatening or not, but I didn't want to take the chance and the Court assumed that responsibility. Before releasing Ms. Delpapa, the court convened the lawyers and on the record advised the lawyers that the Court would take that action. Mr. McClatchey timely and contemporaneously voiced objection to the Court releasing Mr. Delpapa and (sic) for appellate purposes. The Court wants to make it clear that he timely and contemporaneously objected to the Court excusing Ms. Delpapa with the limited information that he had or what the information was.
Defense counsel was then given an opportunity to further argue his objection. Defense counsel complained that the juror was summarily dismissed by the trial court without further inquiry and without making a determination of whether she needed to leave or could continue to serve. The trial court agreed that the juror was summarily dismissed, but explained that it did not want to put the juror in the position of learning of the medical emergency in a courtroom situation and being questioned with regard to her ability to continue to serve without first making some telephone calls or contacts outside the courtroom.
Defendant contends it was reversible error to dismiss juror Delpapa without first making a meaningful inquiry into her ability to continue to serve on the jury. Defendant argues that the bailiff, who was the sole source of information on the issue, should have been made available to defense counsel for questioning prior to the trial court's decision to excuse juror Delpapa. Defendant argues that if the court had telephoned the hospital, it could have obtained and provided counsel with more information as to whether the juror's spouse was faced with a life-threatening emergency.
LSA-C.Cr.P. art. 831A(3) provides that a defendant charged with a felony shall be present at the calling, examination, challenging, empaneling and swearing of the jury and "at any subsequent proceedings for the discharge of the jury or juror." See State v. White, 244 La. 585, 153 So.2d 401, 409 (1963) ([O]nce a juror has been qualified as competent to serve and swornall in the presence of the defendanthe cannot thereafter be disqualified as incompetent to serve unless the defendant is present.). See also State v. Copeland, 419 So.2d 899, 905 (La.1982) (trial judge committed reversible error *929 when he communicated with two jurors outside the presence of the defendant and his counsel "and determined that they were able to continue to serve on the jury without complying with the mandate of LSA-C.Cr.P. art. 831A(3) that defendant be present at such stage of the proceedings."). This rule is broader than the accused's right under the Due Process Clause `"to be present at a proceeding `whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.... [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" State v. Hampton, 1998-2605 (La.5/28/99), 737 So.2d 699, citing United States v. Gagnon, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985). Nevertheless, the right conferred by LSA-C.Cr.P. art. 831A(3) is not absolute and may be tempered by exigent circumstances arising at trial. State v. Hampton, supra.
In State v. Prout, 95-1845 (La.App. 4th Cir.4/10/96), 672 So.2d 933, the defendant argued that the trial court erred in dismissing a juror after he had been sworn without having allowed the defense an opportunity to question the juror. The court cited State v. Spencer, 446 So.2d 1197 (La. 1984), and quoted from that case:
Code of Criminal Procedure article 831(3) provides that a defendant charged with a felony shall be present at the calling, examination, challenging, empanelling (sic), and swearing of the jury and "at any subsequent proceedings for the discharge of the jury or a juror." Id. See State v. White, 244 La. 585, 153 So.2d 401 (1963). This rule ... does not prevent a trial court from acting summarily to dismiss a juror in an emergency unless the defendant can show that he has been prejudiced thereby....
[S]ituations may sometimes arise when a respect for the rights of jurors will require the judge to take immediate action without consulting counsel, e.g., if a juror is taken so ill that he cannot come to court....
In Prout, supra, the bailiff informed the trial court that the juror was ill, suffering with diarrhea and that he had vomited twice since having been chosen. The fourth circuit held that the defendant had not shown any prejudice resulting from his absence when the juror was dismissed. Therefore, the court did not find any error in the trial court's dismissal of the juror without first giving the defense an opportunity to question the juror.
Also, in State v. Fuller, 454 So.2d 119 (La.1984), the supreme court recognized that the trial court has discretion to utilize the service of an alternate juror, and noted that the replacement of the juror with the alternate has been approved, rather than to grant a mistrial, upon a proper finding that the former is the best course of action. The court determined that the trial judge in this case acted in a fair and deliberative manner when he decided that the juror's willful violation of the court's sequestration order by going to the motel bar was a sufficient ground to disqualify him from further service. The sequestration violation was made on the evening of the next to last day of trial, after all the evidence had been presented. The trial judge also considered alternative courses of action. The court concluded that replacing the juror with the alternate under the overall circumstances was a proper exercise of the trial judge's discretion.
A review of the record with regard to the circumstances surrounding the trial court's release of juror Delpapa reveals that the court neither abused its discretion in utilizing an alternate juror in *930 this case nor committed reversible error in doing so outside the presence of the defendant. The defendant has failed to show that his right to due process was thwarted by his absence during this procedure. Furthermore, the defendant's right to be present conferred by LSA-C.Cr.P. art. 831A(3) is not absolute, and was tempered by exigent circumstances arising at trial. The trial court exercised sound judgment in releasing the juror upon learning from the bailiff that her spouse had been taken to the hospital. The only information available was that the situation was a medical emergency. The exercise of common sense led the trial court to conclude that juror Delpapa would necessarily need to violate the sequestration order to gain sufficient information to intelligently answer questions regarding whether she could continue to serve as a juror under the circumstances. The trial court further exercised due compassion in avoiding the situation in which juror Delpapa would have been publicly informed of her spouse's medical situation before the court, counsel and the defendant. This assignment is without merit.
Defendant's Supplemental Pro Se Assignment of Error:
By this assignment, the defendant complains that the trial court erroneously denied him the opportunity of self-representation. He also complains that he received ineffective assistance of counsel because his newly assigned defense team only visited him once before trial.[2]
The Sixth Amendment right of self-representation cannot be exercised without the waiver of another fundamental right also guaranteed by the Sixth Amendment, i.e., the right to counsel. Buhl v. Cooksey, 233 F.3d 783 (3d Cir.2000).[3] An accused may waive his right to counsel and choose to represent himself; however, such a waiver and choice must be knowingly, intelligently and unequivocally asserted. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); State v. Strain, 585 So.2d 540 (La.1991). Courts must indulge in every reasonable presumption against a waiver of counsel. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), Johnson, supra; Buhl, supra. In order to overcome this presumption and represent himself, a defendant must clearly and unequivocally ask to proceed pro se. Faretta, supra; Brown v. Wainwright, 665 F.2d 607 (5th Cir. 1982).
The right to self-representation is not absolute. A defendant must voluntarily and intelligently reject representation by an attorney and elect to conduct his own defense and must do so in a timely manner. Martinez v. Court of Appeal of California, 528 U.S. 152, 120 S.Ct. 684,145 L.Ed.2d 597 (2000).
The trial court, in accepting a waiver of counsel at trial, should advise the accused of the nature of the charges and *931 the penalty range, should inquire into the accused's age, education and mental condition, and should determine according to the totality of the circumstances whether the accused understands the significance of the waiver. Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948). Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed by the trial court in determining whether the defendant waived his right to counsel. State v. Flanagan, 32,535 (La.App.2d Cir.10/29/99), 744 So.2d 718; State v. Dunn, 30,269 (La.App.2d Cir.2/25/98), 713 So.2d 479, on rehearing, writ dismissed, 98-0978 (La.1/15/99), 735 So.2d 644.
A determination of whether a defendant has knowingly, intelligently and unequivocally waived his right to counsel and asserted the right to self-representation must be based on the facts and circumstances of each case. Johnson, supra; State v. Strain, supra. The state bears the burden of establishing that the defendant knowingly and intelligently waived his constitutional right to the assistance of counsel. State v. Brooks, 452 So.2d 149 (La.1984); State v. Wisenbaker, 428 So.2d 790 (La.1983).
In the instant case, a review of the discussion set forth by the defendant does not reveal that he made a "knowing and intelligent" waiver of his right to be assisted by counsel. The trial court, in cautioning the defendant not to make the decision of self-representation too hastily, was merely making the defendant "aware of the dangers and disadvantages of self-representation." On this record, we find that the defendant's argument that he was erroneously denied the right to self-representation lacks merit.
Ineffective assistance of counsel:
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court than by appeal. This is because post-conviction relief creates the opportunity for a full evidentiary hearing under LSA-C.Cr.P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Williams, 33,581 (La.App.2d Cir.6/21/00), 764 So.2d 1164.
In the instant case, the record on appeal is insufficient for a proper determination of the defendant's claim. Defendant's claim of ineffective assistance of counsel can be more properly reviewed in an application for post-conviction relief. Therefore, this assignment will not be addressed.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Statutorily superceded in part by LSA-C.Cr.P. art. 905.2A regarding who may give victim impact testimony. See, State v. Gomez, XXXX-XXXX (La.1/16/01), 778 So.2d 549.
[2] This supplemental pro se assignment of error was argued in the defendant's brief, filed on March 24, 2003. Subsequently, on July 11, 2003, the defendant filed a pro se request for a copy of a portion of the transcript which had been sealed by the trial court. This court granted the defendant's request on July 23, 2003. The sealed portion of the transcript was provided to the defendant, and the defendant was given 30 days from the date of the order within which to file any brief. No additional brief has been filed.
[3] The rights granted under the Sixth Amendment of the United States Constitution are coextensive, in scope, operation and application, with those granted by the Louisiana Constitution, Article I, Section 13. State v. Carter, 94-2859 (La.11/27/95), 664 So.2d 367; State v. Ormond, 00-13 (La.App. 5th Cir.04/24/01), 786 So.2d 187.